Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
01/15/2016 12:05 PM CST

State of Nebraska, appellee, v.
Darnell L. Russell, appellant.
___ N.W.2d ___

Filed January 15, 2016.    No. S-15-037.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Pretrial Procedure: Appeal and Error.** Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion.

4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

5. **Trial: Evidence: Appeal and Error.** On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered at trial.

6. **Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

7. **Criminal Law: Pretrial Procedure: Appeal and Error.** Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.

8. **Pretrial Procedure: Prosecuting Attorneys: Evidence: Words and Phrases.** Whether a prosecutor's failure to disclose evidence results in prejudice depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal.
9. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

Daniel R. Stockmann for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Wright, Connolly, McCormack, Miller-Lerman, Cassel, and Stacy, JJ.

Wright, J.

## NATURE OF CASE

Darnell L. Russell appeals from his conviction for conspiracy to commit unlawful possession with intent to deliver a controlled substance, crack cocaine. Russell claims the court erred in allowing a police officer to testify concerning the meaning of certain cell phone calls and text messages between Russell and other persons involved in the drug conspiracy. He also claims the court erred in allowing a witness to testify despite the State's failure to timely disclose the person's status as a witness. Finally, Russell claims the court erred in convicting him of a Class IB felony instead of a Class II felony and by imposing an excessive sentence.

## SCOPE OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only

when the rules make discretion a factor in determining admissibility. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[3] Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion. *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009).

[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Wang*, 291 Neb. 632, 867 N.W.2d 564 (2015).

## FACTS

### Background

The Greater Omaha Safe Streets Task Force is a coalition of local, state, and federal law enforcement agencies that conducts long-term investigations related to narcotics and violent crime. In the summer of 2012, the task force began an operation to investigate the distribution of crack cocaine in Omaha, Nebraska. Approximately 15 people were targeted during the investigation, 8 of whom were ultimately arrested, including Russell.

Russell was charged with conspiracy to commit unlawful possession with intent to deliver a controlled substance, crack cocaine, under Neb. Rev. Stat. § 28-202 (Reissue 2008), a Class IB felony. He was also charged with being a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2008), but that charge was not pursued.

### Pretrial Motions

On the morning that Russell's trial was set to begin, he filed a motion to continue as well as a motion in limine to exclude the testimony of F.L., a confidential informant. Both motions

were based on Russell's assertion that F.L.'s identity was not timely disclosed, in violation of the court's discovery order. During a hearing on the motions, Russell's counsel explained that he had received police reports during the discovery process detailing the work of two separate confidential informants, but was advised as to the identity of only one of them. Ten days before trial, Russell received the State's notice to endorse two additional witnesses, one of whom was F.L. However, it was not until 4 days prior to trial that Russell's counsel was first advised that F.L. was the identity of the second confidential informant. Russell argued that because F.L.'s identity was not timely disclosed, he was unable to properly investigate F.L. prior to trial, and that therefore, a continuance or exclusion of F.L.'s testimony was appropriate.

In response, counsel for the State asserted that approximately 1 month before trial, he advised Russell's counsel that the State would be presenting testimony from two confidential informants at trial, one of whom Russell's counsel had already deposed. Counsel for the State inquired at that time whether Russell wished to depose the other confidential informant, which Russell's counsel declined to do. Counsel for the State further explained that he filed a notice to endorse F.L. as a witness approximately 10 days before trial, as soon as he realized that F.L.'s name was not included on the initial list of endorsements. The State argued that there was no prejudice to the defense because F.L. would not testify to anything that was not articulated in the reports that Russell had received more than 3 months before trial, and F.L. would be available for Russell to depose that evening.

The court overruled both of Russell's motions, concluding there was no prejudice from the alleged discovery violation. It emphasized that the substance of F.L.'s testimony was known to Russell well before the trial was to begin, that F.L. would be available for a deposition before his testimony would be presented at trial, and that Russell had sufficient time to deal with any late disclosure.

TRIAL AND SENTENCING

The evidence at trial established that the task force utilized wiretaps, controlled buys, surveillance, and other investigatory techniques to identify various persons in a crack cocaine distribution chain. Briefly stated, officers began the investigation by using a confidential informant to conduct a number of controlled buys from two street-level dealers, which in turn provided the necessary probable cause for officers to obtain warrants to intercept calls and text messages to and from the cell phones of those street-level dealers. Using the information gleaned from those intercepts, officers conducted physical surveillance and were able to identify Russell as the supplier for both of the street-level dealers. At that point, law enforcement obtained a warrant to intercept calls and text messages from Russell's cell phone as well, which led officers up the distribution chain to Russell's supplier.

Throughout the course of Russell's trial, the prosecution played for the jury several of the intercepted cell phone calls involving Russell and others in the distribution chain. Officer James Paul, the lead investigator for this operation, was asked on multiple occasions to testify as to the meaning of certain drug-related code words and phrases that were used during the calls. Before doing so, however, Officer Paul testified that he had been in law enforcement for 22 years and had extensive experience and training in the investigation of narcotics crimes. Officer Paul indicated that he had participated in thousands of narcotics investigations involving crack cocaine and had interviewed hundreds of users and dealers in the area regarding how crack cocaine is bought and sold. Through this experience, Officer Paul gained a familiarity with various code words and jargon used by people who are involved in the distribution of crack cocaine.

After the cell phone calls were played for the jury, Officer Paul testified regarding the meaning of drug-related code words and offered his opinion that Russell was discussing either buying or selling crack cocaine in the calls and text messages.

Russell objected to the testimony on the ground that it usurped the jury's factfinding role as to the meaning of the calls and messages. The district court overruled Russell's objections and allowed Officer Paul to testify.

At the conclusion of the trial, the jury found Russell guilty of conspiracy to commit unlawful possession with intent to deliver 140 grams or more of crack cocaine. A sentencing hearing was subsequently held in the district court, during which Russell argued that pursuant to § 28-202(4), his crime was actually a Class II felony, rather than a Class IB felony. The district court rejected Russell's argument and sentenced him on the Class IB felony to 20 to 25 years' imprisonment, with credit for 173 days served. Russell timely appeals.

## ASSIGNMENTS OF ERROR

Russell assigns that the district court erred by (1) allowing Officer Paul to give his opinion regarding the meaning of cell phone calls involving Russell that were intercepted by wiretap; (2) allowing F.L. to testify despite the State's untimely disclosure of his identity, in violation of the court's discovery order; (3) finding Russell guilty of a Class IB felony rather than a Class II felony; and (4) imposing a sentence that was excessive and an abuse of discretion.

## ANALYSIS

### Testimony of Officer Paul

Russell first contends that the district court erred in allowing Officer Paul to give his opinion regarding the meaning of the calls that were intercepted from Russell's cell phone. He argues that it was unclear whether Officer Paul testified as a lay witness or as an expert witness, but that either way, the testimony was inadmissible. Russell asserts that if Officer Paul testified as a lay witness, his opinion was inadmissible because it invaded the province of the jury in that the jury was itself equipped to determine the meaning behind the cell phone calls. If Officer Paul testified as an expert witness, Russell asserts

that his opinion was inadmissible because his status as an expert was not disclosed to Russell before trial.

[5,6] The State argues that Russell cannot object to the evidence on a different ground than was offered at trial. We agree. On appeal, a defendant may not assert a different ground for his objection to the admission of evidence than was offered at trial. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014). An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground. *Id*. Accordingly, our analysis is limited to Russell's claim that Officer Paul's testimony invaded the province of the jury, as that was the only basis upon which he objected at trial.

We review this assignment of error for abuse of discretion. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

Neb. Evid. R. 701, Neb. Rev. Stat. § 27-701 (Reissue 2008), provides that if the witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue.

This court has not previously addressed the propriety of a police officer's testifying as to the meaning of code words or slang used by persons involved in drug trafficking. However, Nebraska has essentially adopted rules 701 and 702 of the Federal Rules of Evidence. We therefore look to the federal courts, which apply Fed. R. Evid. 701 and 702. These courts have determined that such opinion testimony in lay and expert

form is admissible provided that foundational or procedural requirements are met.

In *U.S. v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996), the court stated: "There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis." See, also, *U.S. v. Rollins*, 862 F.2d 1282 (7th Cir. 1988). Such testimony is helpful because the meaning of narcotics code words and phrases is not within the common understanding of most jurors.

Here, several of the calls involved code words or slang with which the ordinary juror would not be familiar but which were understood by Officer Paul, who had many years of experience investigating drug crimes in the Omaha area. Other calls contained phrases or references that would not make sense without information obtained from the investigation. Cyphering the meaning and intent of the cell phone calls involving Russell was something that the jury would be unable to do without the interpretation of the slang or code words used during the wiretapped calls. The district court did not abuse its discretion in admitting Officer Paul's testimony regarding his opinion as to the meaning of the code words or slang in the cell phone calls presented to the jury. There was proper foundation for Officer Paul's opinion. It was rationally based upon his perception, and it was helpful to the determination of a fact in issue.

### Testimony of F.L.

Russell next argues that the district court abused its discretion in denying his motions to continue or exclude the testimony of F.L.

F.L. was an informant who had agreed to conduct controlled buys in lieu of being charged with felony possession of a controlled substance. F.L. conducted a controlled buy from a certain individual. It was the State's theory that Russell supplied the crack cocaine to the individual, who then sold it to F.L. Russell claims he did not learn of the identity of F.L. until 4 days prior to the beginning of the trial. Russell's motion

to continue the trial was overruled. His motion in limine to exclude the testimony of F.L. pursuant to Neb. Rev. Stat. § 29-1919(3) (Reissue 2008) was also overruled.

[7] Discovery in a criminal case is generally controlled by either a statute or court rule. *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014). Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion. *Id.* Section 29-1919 sets forth various remedies the court may employ when there is a claimed violation of a discovery order.

In its discovery order of December 17, 2013, the court ordered mutual and reciprocal discovery pursuant to statute. Neb. Rev. Stat. § 29-1912(1)(d) (Cum. Supp. 2014) requires the prosecutor to disclose the names and addresses of witnesses on whose evidence the charge is based. Before trial, the prosecution advised Russell that the State would call two informants to testify. Russell was aware of the identity of one of those informants and had already deposed him. Although the prosecutor did not identify the second informant as F.L., he did offer to allow Russell to depose him, which offer Russell declined.

[8] The record establishes that a month before the start of the trial, the prosecution knew F.L. would testify, but did not make that known to Russell until just 10 days prior to trial. Whether a prosecutor's failure to disclose evidence results in prejudice depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal. *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013).

We conclude that the State's late disclosure of the witness did not hinder Russell's preparation of his defense. Russell was

aware well before trial of the substance of F.L.'s testimony and that the State planned to call him as a witness. Russell was given an opportunity to depose F.L. several weeks before trial but declined to do so. F.L.'s testimony at trial was similar to that of the first informant, who had previously been deposed by Russell. Russell admitted that he knew 2 weeks before trial that F.L. was the second informant. Because the failure to disclose F.L. as a witness until 4 days before trial did not prejudice Russell, we conclude that the court did not abuse its discretion in overruling the motions to continue trial or exclude the testimony of F.L.

## CLASSIFICATION OF CRIME

Russell claims the court erred in concluding that his crime was a Class IB felony rather than a Class II felony. Section 28-202(4) provides: "Conspiracy is a crime of the same class as the most serious offense which is an object of the conspiracy, except that conspiracy to commit a Class I felony is a Class II felony." Statutory interpretation is a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Wang*, 291 Neb. 632, 867 N.W.2d 564 (2015).

At the sentencing hearing, the district court found that Russell had been convicted of a Class IB felony and therefore was subject to the penalty range for a Class IB felony of a minimum of 20 years' imprisonment and a maximum of life imprisonment. Russell argues that a person charged with a conspiracy is to face the same penalty as he would on the underlying felony that is the subject of the conspiracy. Russell argues there is an exception when the subject of the conspiracy is a Class I felony. Under this exception, § 28-202(4) provides that the conspiracy is a Class II felony. He argues that the Legislature did not intend for conspiracy to commit a Class I felony be punishable as a Class I felony, which imposes death or life imprisonment. We agree, but this argument misses the point.

Russell was found guilty of conspiracy to distribute more than 140 grams of crack cocaine. Possession with intent to distribute more than 140 grams of crack cocaine is a Class IB felony and not a Class I felony. Based on the weight of the crack cocaine that was involved (more than 140 grams), the most serious offense which was the subject of the conspiracy was a Class IB felony. Under the plain language of § 28-202(4), Russell's conspiracy conviction is also a Class IB felony because the "except clause" does not apply, since a Class I felony was not involved.

The problem with Russell's argument is that the crime for which Russell was convicted was not a Class I felony. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014), which was in effect at the time Russell was sentenced, provided in relevant part:

(1) For purposes of the Nebraska Criminal Code and any statute passed by the Legislature after the date of passage of the code, felonies are divided into nine classes which are distinguished from one another by the following penalties which are authorized upon conviction:

Class I felony . . . Death
Class IA felony . . . Life imprisonment
Class IB felony . . . Maximum—life imprisonment
                      Minimum—twenty years
                      imprisonment
Class IC felony . . . Maximum—fifty years imprisonment
                      Mandatory minimum—five years
                      imprisonment
Class ID felony . . . Maximum—fifty years imprisonment
                      Mandatory minimum—three years
                      imprisonment

Class II, III, IIIA, and IV felonies are not described herein.

The plain language of § 28-105 establishes nine classes of felonies, of which five are similar in the sense that the classification label begins with "I." But this does not mean that those five classes are all Class I felonies. A Class I felony is not the same as a Class IB felony, and the penalties are

different. The district court was correct in determining that Russell's offense was a Class IB felony and in sentencing him accordingly.

## EXCESSIVE SENTENCE

[9] Russell argues that his sentence was excessive and therefore an abuse of discretion. An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). Russell's sentence was within the applicable limits. The question is whether the court abused its discretion in the sentence it imposed upon Russell. The presentence investigation report shows that Russell had an extensive criminal record, including multiple drug and firearm charges, and that he committed this crime while on a supervised release. He was assessed as a very high risk to reoffend. The sentence imposed by the court was within the statutory requirements, and we conclude that the sentence was appropriate. The court did not abuse its discretion in sentencing Russell to 20 to 25 years' imprisonment.

## CONCLUSION

For the reasons set forth herein, we affirm the judgment and sentence of the district court.

AFFIRMED.

HEAVICAN, C.J., not participating.