Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/10/2016 08:06 AM CDT

State of Nebraska, appellee, v.
Trey T. Carpenter, appellant.
___ N.W.2d ___

Filed June 10, 2016.    No. S-15-697.

1. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion of the
   trial court, an appellate court reviews the admissibility of evidence for
   an abuse of discretion.
2. **Trial: Evidence: Appeal and Error.** A trial court's determination of the
   relevancy and admissibility of evidence must be upheld in the absence
   of an abuse of discretion.
3. **Convictions: Evidence: Appeal and Error.** In reviewing a claim that
   the evidence was insufficient to support a criminal conviction, an appel-
   late court does not resolve conflicts in the evidence, pass on the credibil-
   ity of witnesses, or reweigh the evidence; such matters are for the finder
   of fact, and a conviction will be affirmed, in the absence of prejudicial
   error, if the evidence admitted at trial, viewed and construed most favor-
   ably to the State, is sufficient to support the conviction.
4. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court.
5. **Trial: Evidence: Words and Phrases.** The concept of "opening the
   door" is a rule of expanded relevancy which authorizes admitting evi-
   dence which otherwise would have been irrelevant in order to respond
   to (1) admissible evidence which generates an issue or (2) inadmissible
   evidence admitted by the court over objection. These two aspects of
   "opening the door" may be referred to as "specific contradiction" and
   "curative admissibility," respectively.
6. **Evidence: Witnesses.** Neb. Rev. Stat. § 27-608(2) (Reissue 2008) does
   not affect the admissibility of evidence that has become relevant and
   admissible under the specific contradiction doctrine.

7. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Thomas S. Stewart, Deputy Buffalo County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Trey T. Carpenter was convicted in the district court for Buffalo County of possession of methamphetamine with intent to deliver. The court sentenced Carpenter to imprisonment for 5 to 15 years. Carpenter appeals his conviction and sentence. He claims that the court improperly allowed the State to present on rebuttal extrinsic evidence of a prior incident in order to impeach his testimony which he presented in his own defense. He also claims that there was insufficient evidence to support his conviction and that the court imposed an excessive sentence. We affirm Carpenter's conviction and sentence.

## STATEMENT OF FACTS

On the evening of November 20, 2014, Officer Paul Jon Loebig of the Kearney Police Department was parked in his patrol vehicle observing activity at a nearby apartment building. A car approached and parked across the street. Loebig, who was familiar with both Carpenter and his brother Eli Carpenter (Eli), recognized the car as one belonging to Eli.

Loebig saw an unidentified person leave the back seat of the car and go to an apartment. Loebig then saw Eli get out of the driver's side of the car while Carpenter got out of the passenger side. As he watched the two getting out of the car, Loebig heard what he thought sounded like a glass pipe landing on concrete.

As Carpenter and Eli walked away, Loebig pulled up to the car and shined a light underneath it. He observed a glass pipe on the ground on the passenger side. Loebig got out of his patrol vehicle and, after putting on gloves, picked up the glass pipe. He determined that it was the type of pipe used to smoke methamphetamine, and he observed inside the pipe some white residue which he believed to be methamphetamine. Loebig called for a K-9 unit to be brought to the scene, and as he was waiting for it to arrive, Carpenter and Eli returned to the car.

Loebig asked Carpenter to come to his patrol vehicle to talk with him while another police officer talked with Eli. Loebig told Carpenter that he had found the pipe, and Carpenter admitted that the pipe had fallen out of his pocket. Carpenter consented to a pat-down search, and Loebig placed Carpenter into the back seat of his patrol vehicle.

After the K-9 unit arrived, the dog sniffed around Eli's car. The dog sniff indicated that there were controlled substances inside the car. Loebig and another officer then searched the car. Loebig opened the passenger-side door and noted a strong odor of marijuana. In the center console, he found a Tupperware container which held a small baggie of marijuana, a small baggie that contained some small blue pills, and two larger bags of a white crystalline substance, which a field test indicated was methamphetamine. The officers found various other items of drug paraphernalia inside the car, including small measuring cups. Loebig also observed a black backpack on the floor on the passenger side of the front seat. Inside the backpack, Loebig found Carpenter's state identification card and a baggie that contained a small amount of a white crystalline

substance that field-tested positive for methamphetamine. After the search, Loebig arrested Carpenter and brought him to the jail. Loebig asked Carpenter whether he would speak with the police department's drug investigator, and Carpenter replied that "he would talk to him just to tell him that everything in the car belonged to him."

The State charged Carpenter with two counts: (1) possession of a controlled substance, methamphetamine, with intent to deliver (at least 28 grams but less than 140 grams) and (2) possession of a controlled substance, morphine. The charge of possession of morphine was dismissed at trial after the State failed to adduce evidence that the blue pills found in the car were morphine.

Loebig testified at trial regarding the events of November 20, 2014, as set forth above. The State also presented the testimony of a drug analyst from the Nebraska State Patrol crime laboratory who testified that she had tested the white crystalline substance that was found in the search of the car, that the substance was found to be methamphetamine, and that its weight was 32.46 grams. Another witness called by the State was Gabe Kowalek, a narcotics investigator with the Kearney Police Department. Kowalek testified regarding his training and experience as a narcotics investigator, and he testified that he had assisted Loebig in processing the evidence after Carpenter's arrest. Kowalek opined that the amount of methamphetamine found in the search of the car was considered to be "typical of distribution weight" and that other items found in the search were indicative of distribution.

In his defense, Carpenter presented testimony by his mother. She testified that on the evening of November 19, 2014, she had seen a Tupperware container in the sole possession of her other son, Eli, and that it was the same container that was found in the November 20 search of Eli's car. She also stated that she was testifying in this case "[b]ecause [Carpenter] sat in jail for like five months for something I knew wasn't his . . . ."

Carpenter also testified in his own defense. He admitted that the backpack and the small amount of methamphetamine inside it were his, but he testified that he did not know about the 32.46 grams of methamphetamine in the Tupperware container in Eli's car. Carpenter admitted that he was addicted to methamphetamine. But what is important for our purposes on appeal is his direct testimony that he did not "deal, sell, [or] give away methamphetamine" and that he was not "working in concert with [Eli] for the sale of methamphetamine." He testified to the same effect on cross-examination. Carpenter further testified that when he told Loebig that everything in the car was his, he was referring only to the small amount of methamphetamine inside his backpack and he was not aware of the larger amount of methamphetamine in the Tupperware container.

For its rebuttal, the State made an offer of proof of the proposed testimony by Kowalek and by a drug investigator for the Buffalo County sheriff's office. The two officers would testify to the jury that in September 2014, they were told by a confidential informant that he could buy methamphetamine from Carpenter. The officers then set up a controlled purchase and listened in on a transaction in which the confidential informant bought methamphetamine from Carpenter. A warrant for Carpenter's arrest was issued as a result of the September incident, and charges against Carpenter related to the September incident were pending at the time of trial in this case.

Following the State's offer of proof, the district court ruled that it would allow the State to present the officers' testimony on rebuttal. The officers thereafter testified to the jury regarding the September 2014 controlled purchase from Carpenter. After the officers testified, the court admonished the jury that the "evidence was received only for the limited purpose of [its] evaluation of the testimony of [Carpenter]" and that the jury "must consider that evidence for that limited purpose and for no other." When it submitted the case to the jury, the

court gave an instruction in which it referred to the officers' testimony in the State's rebuttal and stated that the evidence "was received only for the limited purpose of your evaluation of the testimony of [Carpenter], and not whether he acted in conformity in this matter with his alleged acts in September of 2014."

The jury found Carpenter guilty of possession of methamphetamine with intent to deliver, and it found that the amount of methamphetamine possessed by Carpenter was 32.46 grams. The court entered judgment on the verdict. The court thereafter sentenced Carpenter to imprisonment for "a mandatory minimum of 5 years and no more than 15 years."

Carpenter appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Carpenter claims that the district court erred when it allowed the State to rebut his testimony by presenting the testimony of the officers regarding the September 2014 incident. He also claims that there was insufficient evidence to support his conviction and that the court imposed an excessive sentence.

## STANDARDS OF REVIEW

[1,2] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757, (2015). A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

[3] In reviewing a claim that the evidence was insufficient to support a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support

the conviction. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016).

## ANALYSIS

*Court Did Not Err When It Allowed the State to Present Rebuttal Evidence to Specifically Contradict Carpenter's Direct Testimony.*

Carpenter claims that the district court erred when it allowed the State to present rebuttal evidence consisting of the officers' testimony regarding Carpenter's sale of methamphetamine during the September 2014 controlled purchase to contradict Carpenter's direct testimony given in his defense. We determine that the officers' testimony was admissible to specifically contradict Carpenter's direct testimony to the effect that he did not distribute methamphetamine. Therefore, the court did not abuse its discretion when it admitted the officers' testimony.

Carpenter contends that the purpose of the officers' testimony regarding the September 2014 incident was to impeach his testimony which he presented in his defense and that such rebuttal evidence could not be used for that purpose under Neb. Rev. Stat. § 27-608 (Reissue 2008). Section 27-608(1) generally provides that, subject to certain limitations, reputation or opinion evidence may be used to attack a witness' credibility. However, § 27-608(2) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, . . . may not be proved by extrinsic evidence." Nevertheless, § 27-608(2) provides that if such instances of conduct are determined to be probative of the witness' truthfulness or untruthfulness, they may be inquired into only on cross-examination of the witness.

Carpenter argues that the officers' testimony was extrinsic evidence of specific instances of conduct and that under

§ 27-608(2), such extrinsic evidence could not be used to impeach his testimony. Carpenter notes that under § 27-608(2), such specific instances of conduct may be "inquired into on cross-examination of the witness," but that the State in this case made no effort to cross-examine him on his claim he did not sell methamphetamine and that it instead offered only extrinsic evidence of the incident in its rebuttal.

The State argues in response that § 27-608(2) "does not apply where the defendant takes the stand and lies." Brief for appellee at 5. The State contends that Carpenter could not falsely testify that he did not deal drugs and then claim that the State was powerless to rebut Carpenter's untruths. We understand that the State further suggests that because the charge against Carpenter was possession of methamphetamine with intent to deliver, the issue of "intent to deliver" was a fact question about which the September 2014 incident was highly relevant to the fact finder's consideration.

The State relies on a line of federal cases beginning with *Walder v. United States*, 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954), which is generally regarded as the source of the "specific contradiction doctrine." In *Walder*, the U.S. Supreme Court affirmed a conviction in a case where the defendant had testified on direct examination in his own defense that "he had never dealt in or possessed any narcotics." 347 U.S. at 65. The trial court in *Walder* allowed the prosecution to present evidence of a prior incident wherein the defendant had been in possession of heroin. The U.S. Supreme Court stated in *Walder* that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65.

The specific contradiction doctrine is said to apply when one party has introduced admissible evidence that creates a misleading advantage and the opponent is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. *State v. Wamala*,

158 N.H. 583, 972 A.2d 1071 (2009). It is not enough that the opponent's contradictory proffered evidence is merely relevant; the initial evidence must have reasonably misled the fact finder in some way. *Id*. Summarizing the case law, commentators generally agree that although the rules of evidence do not explicitly recognize the admissibility of contradiction evidence, admissibility can be inferred from the relevance rules, Neb. Rev. Stat. §§ 27-401 and 27-402 (Reissue 2008), defining relevance and presuming admissibility, respectively. See 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6096 (2d ed. 2007).

In their consideration of the specific contradiction doctrine, other state and federal courts have concluded that rules of evidence similar to § 27-608 do not prohibit the admission of evidence that has the purpose of specifically contradicting a fact asserted in direct testimony by the defendant in a criminal case. In *People v. Thomas*, 345 P.3d 959, 966 (Co. App. 2014), the court concluded that "evidence may be introduced that specifically contradicts a defendant's direct testimony" and that "CRE 608(b) [the Colorado equivalent of § 27-608(2)] is no impediment to the introduction of such evidence." In addition to finding that the specific contradiction doctrine was consistent with the rules of evidence, the Colorado court referred to federal cases explaining and applying the specific contradiction doctrine and further concluded that the specific contradiction doctrine was consistent with Colorado precedent "involving a defendant's opening the door to rebuttal evidence." *People v. Thomas*, 345 P.3d at 968.

Nebraska jurisprudence also recognizes the concept that a party may "open the door" to evidence that otherwise would have been irrelevant. See *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010), and *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008). It has been noted that courts often use the concept of "opening the door" to describe two different evidentiary concepts—specific contradiction and curative admissibility. See Francis A.

Gilligan & Edward J. Imwinkelried*, Bringing the "Opening the Door" Theory to a Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 Santa Clara L. Rev. 807 (2001) (arguing that those two concepts differ and that courts should not treat them as single concept at risk of confusing them). See, also, *State v. Wamala*, 158 N.H. at 589, 972 A.2d at 1076 (stating that "[t]he opening the door doctrine comprises two doctrines, the 'curative admissibility' and 'specific contradiction' doctrines").

[5] We have described "opening the door" as a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection. *Huber v. Rohrig, supra*; *Sturzenegger v. Father Flanagan's Boys' Home, supra*. Thus, we have used "opening the door" to describe both specific contradiction, i.e., responding to "admissible evidence which generates an issue," and curative admissibility, i.e., responding to "inadmissible evidence admitted by the court over objection." Although we have not referred to the "specific contradiction doctrine" in our discussion of "opening the door," our cases illustrate our acceptance of the concept and we apply it in this case.

In the present case, the parties do not contend that Carpenter's testimony was inadmissible evidence. Given the rules of evidence and our case law, we analyze the admissibility of the State's challenged rebuttal testimony under the specific contradiction doctrine, which relates to evidence offered to respond to admissible evidence presented by the other party which generates an issue which calls for a response. The question then is whether the evidence presented by Carpenter, consisting of his direct testimony that he did not distribute methamphetamine and that he did not work in concert with Eli to do so, generated an issue to which the State needed to respond and, if so, whether the State was properly allowed to present evidence that was not

previously relevant or perhaps not previously admissible. As we explain below, we conclude that the State's offer of rebuttal evidence of the September 2014 controlled purchase of methamphetamine was warranted as relevant and not otherwise inadmissible.

Carpenter asserts that the State's challenged rebuttal evidence was offered to impeach Carpenter and that admission of this evidence violated § 27-608(2). Carpenter frames his argument under § 27-608(2), and we do likewise. We reject Carpenter's argument that § 27-608(2) prohibits admission of extrinsic evidence of his specific conduct in September 2014. Instead, we agree with the reasoning in *People v. Thomas*, 345 P.3d 959 (Co. App. 2014), and the federal criminal cases cited therein, which have concluded that where the evidence is not offered for the sole purpose of proving a witness' character for truthfulness, evidence rules similar to § 27-608(2) do not prohibit the admission of evidence that is intended to specifically contradict a criminal defendant's direct testimony. It was stated in 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6096 at 665-66 (2d ed. 2007):

> Testimony on direct by a defendant in a criminal case can open the door to admission of extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible and, thus, collateral. For example, if defendant on direct denies committing prior bad acts, the defendant may be contradicted with extrinsic evidence of such acts even though that evidence would be inadmissible to prove conduct under Rule 404 or character for truthfulness under Rule 608(b). This open-door approach has been justified on the ground that the defendant should not be permitted to engage in perjury, mislead the trier of fact, and then shield herself from impeachment by asserting the collateral matter doctrine.

Accord *Thomas, supra*. We note particularly that in this case, as in *Thomas*, the testimony sought to be contradicted by

the State's rebuttal evidence was the defendant's direct testimony rather than testimony elicited by the State on cross-examination. Whether the specific contradiction doctrine may be applied to testimony that the State elicits from the defendant on cross-examination is not at issue in this case.

Section § 27-608(2), upon which Carpenter relies, excludes evidence offered "for the purpose of attacking or supporting [the witness'] credibility." Thus, by its terms, § 27-608(2) concerns itself with evidence the sole purpose of which is to attack the witness' credibility by proving instances in which the witness was shown to be dishonest or untruthful. In this respect, we note that in *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 347, 754 N.W.2d 406, 426 (2008), where appellant challenged the admission of evidence under both § 27-608(2) and Neb. Rev. Stat. § 27-404(2) (Reissue 1995), we stated that § 27-608(2)

> applies when extrinsic evidence is offered to impeach a witness, to show the character of the witness for untruthfulness—in other words, where the only theory of relevance is impeachment by prior misconduct. [Section 27-608(2)] affects only evidence of prior instances of conduct when properly relevant solely for the purpose of attacking or supporting a witness' credibility . . . .

In our consideration of the challenge under § 27-404(2), in *Sturzenegger*, we continued and observed that § 27-608(2) "in no way affects the admission of evidence of such prior acts for other purposes under [§ 27-]404(2)." 276 Neb. at 347, 754 N.W.2d at 426. Under the reasoning in *Sturzenegger*, § 27-608(2) does not prevent the admission of the challenged evidence where such challenged evidence is admissible under another rule or, by extension, a doctrine derived from the rules.

[6] Similarly to *Sturzenegger*, we determine that § 27-608(2) does not affect the admissibility of evidence that has become relevant and admissible under the specific contradiction doctrine. When evidence is admissible pursuant to the specific

contradiction doctrine, the purpose of the evidence is limited to disproving a specific fact to which the witness testified rather than generally attacking the witness' credibility. In other words, § 27-608(2) applies to evidence that is intended to show that the witness is generally untruthful and therefore that the witness' testimony is not credible, whereas the specific contradiction doctrine applies to evidence that is intended to disprove a specific fact to which the witness testified. Thus, where the evidence has been made relevant for the purpose of responding to a purported fact contained in the witness' testimony and the evidence was not offered solely for the purpose of attacking the witness' credibility, the evidence becomes admissible under the specific contradiction doctrine.

In the present case, Carpenter testified on direct that he did not "deal, sell, [or] give away methamphetamine." In response, the State offered evidence in rebuttal that in September 2014, Carpenter had sold methamphetamine to a confidential informant. The State's offered evidence became relevant under the specific contradiction doctrine in order for the State to respond to the issue of fact, generated by Carpenter's testimony, regarding whether or not Carpenter distributed methamphetamine. The evidence was not offered for the purpose of generally attacking Carpenter's credibility, a concern of § 27-608, but instead to contradict specific testimony regarding a factual matter.

We note that the court's instruction to the jury in this case was consistent with the purpose for which the evidence of the September 2014 controlled purchase was admitted, i.e., to specifically contradict a statement by Carpenter. The court instructed the jury that it was to use the evidence for "evaluation of the testimony of [Carpenter], and not whether he acted in conformity in this matter with his alleged acts in September of 2014." This instruction was carefully crafted. The instruction limited the jury's use of the State's rebuttal evidence to the purpose for which it was received, i.e., to evaluate Carpenter's specific testimony that he did not distribute methamphetamine, and also admonished the jury that the

evidence was not to be used to show Carpenter's character or propensity to act in a certain way.

We conclude that under the specific contradiction doctrine, § 27-608(2) did not prohibit the admission of the State's relevant rebuttal evidence regarding the September 2014 incident offered for the purpose of specifically contradicting Carpenter's direct testimony that he did not "deal, sell, [or] give away methamphetamine." The district court therefore did not abuse its discretion when it allowed the State on rebuttal to present the officers' testimony regarding the September 2014 incident.

*There Was Sufficient Evidence to
Support Carpenter's Conviction.*

Carpenter next claims that there was not sufficient evidence to support his conviction. We reject this claim.

The jury found Carpenter guilty of possession of methamphetamine with intent to deliver, a violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 2014), and it found that the amount of methamphetamine possessed by Carpenter was 32.46 grams. The evidence presented by the State, as set forth in the statement of facts above, was sufficient for the jury to find that the white crystalline substance found in the car was methamphetamine and that the quantity was 32.46 grams. The jury also could have found from the evidence that the methamphetamine was in Carpenter's possession and that he possessed it with the intent to deliver.

Carpenter argues that the State's evidence was insufficient because he presented evidence which indicated that the methamphetamine belonged to his brother Eli. Carpenter testified in his defense that he was merely a passenger in the car and that he did not know the two large bags of methamphetamine were in the car. Carpenter testified that Eli possessed the methamphetamine without Carpenter's knowledge. In addition to his own testimony, Carpenter notes his mother's testimony that she saw Eli with the Tupperware container of methamphetamine

on the day prior to the arrest and that she was told he intended to sell it.

In reviewing for sufficiency of the evidence, we do not resolve conflicts in the evidence or pass on the credibility of witnesses, because such matters are for the finder of fact. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). By its verdict, the jury as fact finder determined, based on all the evidence, that the crime charged had been committed. The jury evidently found the State's evidence to be more credible than the evidence Carpenter presented in his defense. We do not question the jury's determinations of credibility on appeal; instead, we determine that the evidence admitted at trial, viewed and construed most favorably to the State, was sufficient to support Carpenter's conviction for possession of methamphetamine with intent to deliver. We reject Carpenter's claim that the evidence was not sufficient to support his conviction.

*Court Did Not Impose an*
*Excessive Sentence.*

Carpenter finally claims that the sentence of imprisonment for 5 to 15 years imposed by the district court was excessive. We conclude that the sentencing was within statutory guidelines and that the court did not abuse its discretion.

Carpenter was convicted of possession of methamphetamine with intent to deliver, and the jury found that the amount of methamphetamine possessed by Carpenter was 32.46 grams. Therefore, the offense was a Class IC felony under § 28-416(10)(b). The penalty range for a Class IC felony was imprisonment for a mandatory minimum of 5 years and a maximum of 50 years. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014). Therefore, Carpenter's sentence of imprisonment for 5 to 15 years is within statutory limits.

[7] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion

in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). With regard to the relevant factors that must be considered and applied, we have stated that when imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*.

Carpenter argues generally that the district court "did not seriously consider all the mitigating factors" set forth above. Brief for appellant at 11. However, Carpenter recognizes that the district court had no choice but to impose the mandatory minimum sentence of imprisonment for 5 years. He argues instead that by imposing the mandatory minimum rather than a higher minimum, the court showed that it had "doubts" as to his guilt but was "handcuffed" by the mandatory minimum sentence. *Id.*

Carpenter makes only a general argument that the court did not consider the mitigating factors, and he does not specify any particular factors that were not given adequate consideration. As he acknowledges, the court's discretion was limited by the mandatory minimum set forth by statute. The court imposed a sentence that was at the lower end of the statutory range and that would allow Carpenter to be eligible for parole after serving the mandatory minimum of 5 years. We conclude that Carpenter has failed to show that the district court abused its discretion or imposed an excessive sentence.

## CONCLUSION

Having rejected Carpenter's assignments of error, we affirm his conviction for possession of methamphetamine with intent to deliver and the sentence of imprisonment for 5 to 15 years.

AFFIRMED.