IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. CHAMBERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DARRYL CHAMBERS, APPELLANT.

Filed November 8, 2016.    No. A-16-291.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ann O. Hayden for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

PIRTLE, Judge.

### INTRODUCTION

Darryl Chambers appeals from his conviction for assault in the first degree, a Class II felony. On appeal he challenges the sufficiency of the evidence to support his conviction and the sentence imposed by the district court. For the reasons that follow, we affirm.

### BACKGROUND

*Procedural Background.*

On September 10, 2015, Darryl was charged by information with: count 1, first degree assault of his ex-wife, Tina Chambers, arising out of an incident on or about July 3, 2015; and, count 2, terroristic threats.

Darryl filed motions to take the deposition of Tina, and depositions were scheduled. Tina failed to appear for two scheduled depositions. Darryl filed a motion in limine, requesting that the court prevent and exclude the State from "eliciting any testimony or other evidence concerning statements allegedly made by Tina Chambers" including the identification of her assailant. He sought an order preventing and excluding evidence of any such statements made "to any employee of Creighton University Medical Center" or to any other persons lacking first hand, eyewitness knowledge of the events. After a hearing on the motion, the court excluded all statements Tina made to medical personnel relating to the identity of her assailant. The court determined that medical personnel would be allowed to repeat the statements which Tina made for purposes of medical diagnosis or treatment.

An amended information was filed on January 12, 2016. Count 2 was amended to allege that Darryl was a habitual criminal. Darryl did not object to the amended information.

A bench trial was held on January 20 and January 22, 2016. At the close of the State's evidence, Darryl made a motion to dismiss. He asserted that the State failed to make a prima facie case to show that Tina sustained injuries in Douglas County, and that her injuries were the result of any of his actions. Darryl was found guilty of the charge of first degree assault and was determined to be a habitual criminal. Darryl was sentenced to 16 to 30 years' imprisonment, and was given credit for 193 days served. Darryl timely appealed.

*Factual Background.*

At approximately 1 a.m. on July 3, 2015, officers Anthony Barnes and Nicholas Meade, of the Omaha Police Department, were dispatched to a residence on Manderson Street in response to a 911 call. Manderson Street is located in Douglas County. At the time of the call, the nature of the incident was unknown. Barnes testified that he saw movement in the trees at the reported address and a woman emerged, who appeared to be "gushing blood from the face." He stated that she appeared to be terrified. Meade stayed with the woman, while Barnes walked around the property to evaluate the situation.

Barnes saw a man, standing near the front of the house. This man was later identified to be Christopher Griffin, the brother of the victim. Barnes and Meade observed damage to the back door, indicating that it had been forced open. Upon entering the house, Barnes observed that the bathroom door was damaged and a portion of the door frame was lying on the floor. There was blood on the bathroom door frame, floor, and toilet.

Meade testified that when he arrived, the woman was upset and crying, and she was holding a towel to her mouth to soak up blood. He observed blood on the woman's shirt and lower gums. Meade testified that it was difficult to understand the woman's speech; partially because of her emotional state, and partially because of her injuries. He testified that it appeared that her front teeth were loose and that they may have been pushed in. Meade was asked to identify a woman depicted in three photographs, Exhibits 22, 29, and 30. He identified the woman as "The victim, Tina Chambers."

Samuel Weston is an audio technician for Douglas County Communications 911. He testified that a 911 call was received at 10 minutes after midnight on July 3, 2015, requesting service to a residence on Manderson Street. A copy of the 911 call was received as evidence.

Anthony Brummet, a paramedic for the Omaha Fire Department testified that he was dispatched to assist an assault victim just after midnight on July 3, 2015. He found the victim to be awake, alert, and breathing when he arrived. Brummet testified that he relies upon the statements and complaints of the victim to provide the appropriate treatment. The victim reported that she had been struck in the face several times by a fist, and she reported that she was experiencing jaw pain. Brummet transported the victim to Creighton University Medical Center (Creighton) and her care was transferred to the hospital staff.

Griffin testified that he had rented an upstairs room in his sister Tina's home for over a year. At the time Griffin moved in, Darryl was also living in the home. Griffin stated that Darryl had not lived in the home consistently, and he had moved out approximately one month before the incident. Tina had the locks changed about two weeks prior to the incident.

On July 2, 2015, Griffin worked until 11 or 11:30 p.m. and went home. He parked his truck in the driveway and, when he got out of the vehicle, he noticed that Darryl was on the front steps of the home. Griffin stated that Darryl was agitated and his tone of voice was argumentative. Darryl was upset that Griffin was living in the home with Tina, while Darryl was not permitted to, and they argued. Griffin decided to pack some of his clothing and leave.

Upon entering the house, Griffin noticed that the bathroom door was broken. When he did not see Tina upstairs, Griffin returned to the main floor to search for her. He saw her sitting in the living room with her head down. Griffin walked out the front door, and as he did so, Darryl ran past him, down the hallway, and out the back door. As Darryl ran he yelled "you all some snitch ass bitches." At that time, Griffin noticed that there were police cars approaching the home. As the police approached, Tina ran out of the front door of the home, toward the officers. Griffin followed her and noticed that she had blood all over her neck and shirt that appeared to be fresh.

After the police investigated, Griffin noticed that the back door of the home appeared to have been kicked in. Griffin testified that when he left for work on July 2, 2015, the back door and the bathroom door were not damaged, and there was no blood or debris on the floors or toilet. Griffin identified Darryl in the courtroom, and identified Tina's voice on the recording of the 911 call. Griffin testified that following the assault, Tina was in a medically induced coma for 6 days, and was in the hospital for about a month.

Gloria Gonzalez is Tina's mother. She testified that Darryl and Tina were married for about four years, and that Darryl continued to live in Tina's home for a period of time after their divorce. Gonzalez observed that after the assault, Tina's jaw was swollen and she could hardly talk. She stated that doctors wired Tina's jaw closed and performed a tracheostomy. Tina was fed through an IV and was on a ventilator for several days.

While Tina was in the hospital, Gonzalez answered Tina's phone. She answered a call on July 4, and she recognized the voice of the caller. She identified the caller as Darryl. Darryl stated that he was about to turn himself in, and Gonzalez told him that was the best thing to do, advising him to "man up" before she ended the call. Gonzalez identified Darryl in the courtroom and stated that the events related to her testimony occurred in Douglas County.

Kim Burns, a registered nurse at Creighton, testified that she treated Tina after her arrival at the hospital on July 3, 2015. Burns said Tina stated that she had been punched several times in the face.

Doctor Anthony Udekwu, a surgeon at Creighton, testified that he treated Tina on July 3, 2015, as a trauma patient. Tina told Udekwu that she was struck in the face multiple times by a fist. He said Tina had difficulty speaking because she was experiencing swallowing issues as a result of her injuries. Udekwu observed that Tina had bruising, swelling, and abrasions on her face and she had a dental fracture. Tina suffered a central mandibular fracture, and, as a result, she was unable to close her mouth completely. Udekwu testified that it requires a lot of force to break a mandible.

In the afternoon on July 3, 2015, Udekwu performed surgery to wire Tina's jaw closed, to allow the mandibular fracture to heal. Tina had significant swelling in her airway, and the anesthesiologists were concerned about Tina's ability to breathe. Tina was transferred to the intensive care unit and ultimately she underwent a tracheotomy on July 7. Udekwu testified that Tina was sedated and she was given intravenous narcotic medication for her pain. Tina was not allowed to speak for 10 to 12 days following the tracheotomy because of the degree of swelling in her airway.

Udekwu stated that to a reasonable degree of medical certainty, Tina's injuries were very serious. He stated that Tina's injuries were potentially life-threatening because patients are at risk of death from a loss of airway, or an associated fracture of the spine. Udekwu testified that, in his opinion, Tina will have a good outcome with the appropriate medical treatment. He noted that Tina will have permanent plates in her jaw and a scar from the tracheotomy. Udekwu testified that the events related to his testimony occurred in Douglas County.

Doctor Christine Wong, a trauma physician in the emergency department at Creighton, treated Tina on July 3, 2015. Tina suffered extensive facial injury, loose teeth, and was bleeding from her nose and mouth. Wong testified that it appeared that Tina was in a lot of pain. Wong testified that a mandibular fracture is a serious injury because it impacts the patient's airway, and treatment usually involves surgery.

Detective Joan Lacoma is an officer of the Omaha Police Department assigned to the special victims unit, which handles domestic violence cases. She was assigned to a case involving Darryl and Tina on July 8 or 9, 2015. She testified that a warrant was issued for Darryl's arrest on July 7 and that he was placed in custody on July 18.

## ASSIGNMENTS OF ERROR

Darryl asserts the district court erred in overruling his motion to dismiss, and in finding him guilty of first degree assault because there was insufficient evidence to prove he was guilty beyond a reasonable doubt. He also asserts the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the trier of fact. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015). The relevant question is whether after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

ANALYSIS

*Sufficiency of Evidence.*

Darryl asserts the district court erred in finding him guilty of first degree assault because the State failed to adduce sufficient evidence to prove his guilt beyond a reasonable doubt. He argues that the State failed to prove that he intentionally, knowingly, or recklessly caused serious bodily injury to Tina; therefore, the conviction must be reversed. Specifically, he argues that the State relied solely on circumstantial evidence, as the victim did not testify, and there were no eyewitnesses to the attack. He argues that the investigation of the incident was deficient, as the police failed to request phone records, and failed to take and analyze fingerprints or DNA evidence. He also argues the State relied too heavily on the testimony of Griffin, the brother of the victim.

As previously stated, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the trier of fact. *State v. Hale, supra.* The Nebraska Supreme Court has stated that the law imposes a heavy burden on a defendant who claims on appeal that the evidence is insufficient to support a conviction. See *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016) The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Id.*

We have reviewed all the evidence submitted at trial and find it sufficient to support the conviction. While there is no physical or eyewitness evidence linking Darryl to the crime, circumstantial evidence is not inherently less probative than direct evidence. See *State v. Oldson, supra.* In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely on circumstantial evidence and the inferences that may be drawn therefrom. *Id.*

The evidence shows that a 911 call occurred at around 12:10 a.m., and a woman requested assistance at a home on Manderson Street, in Douglas County. Around that time, Griffin arrived home to find Darryl sitting in front of the home. Griffin observed Darryl to be aggressive and agitated, and they argued about Griffin living in the home with Tina, when Darryl was not allowed to. Darryl ran through the home and out the back door, yelling about "snitches" just as the police were approaching. There is no evidence that there were any other people in the house or on the property at that time. The court specifically found Griffin to be a credible witness.

When the police arrived, Tina ran to the officers. She appeared to be upset, terrified, and bleeding from the face and gums. Tina had recently changed the locks on the doors of the home, and Griffin was permitted to have a key, as a resident of the home. The police found signs of forced entry to the back door of the home, substantial damage to the bathroom door and door frame, and blood on the toilet seat. Witnesses testified that the blood around Tina's face and neck appeared to be fresh.

Tina told the paramedic who transported her to the hospital that she was struck in the face, and she told her treating doctors and nurses at the hospital that she was struck multiple times with

a fist. Witnesses described the injuries Tina suffered to be very serious, and said injuries of this type can be life-threatening. She underwent surgery to repair a mandibular fracture and her injuries required a lengthy stay in the hospital. Tina required a tracheotomy, a ventilator to help her breathe, and narcotic pain medication. The day after the incident, Gonzalez answered Tina's phone, and spoke to a man she identified to be Darryl. Darryl told Gonzalez that he intended to turn himself in, and she encouraged him to do so, telling him to "man up." Detective Lacoma was assigned to this case as part of her work in the Omaha Police Department's special victims unit, and testified that a warrant for Darryl's arrest was issued on July 7, 2015.

There was evidence from which the court could reasonably infer that Darryl assaulted Tina in or around the home on Manderson Street, causing serious bodily injury. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Darryl was guilty of assault in the first degree.

Darryl also asserts the district court erred by not sustaining his motion to dismiss at the close of the State's case for failure to make a prima facie case to show that Tina sustained injuries in Douglas County. He asserts the burden is on the State to prove, beyond a reasonable doubt that the elements of the crime occurred in the county in which he was prosecuted. See Neb. Rev. Stat. § 29-1301 (Reissue 2008) (all criminal cases shall be tried in county where offense was committed).

As previously discussed, we found that there is sufficient evidence to show that Darryl assaulted Tina. Barnes, Meade, Brummet, Griffin, Gonzalez, Udekwu, and Weston all testified that the events related to their testimony occurred in Douglas County. The evidence presented was sufficient to prove, beyond a reasonable doubt, that the assault occurred on Manderson Street, in Douglas County. Therefore, the district court did not err in overruling Darryl's motion to dismiss.

*Excessive Sentence.*

Darryl asserts the sentence of imprisonment for 16 to 30 years imposed by the district court was excessive. We conclude that the sentence was within statutory guidelines and that the court did not abuse its discretion.

Darryl was convicted of assault in the first degree, in violation of Neb. Rev. Stat. § 28-308(1) (Cum. Supp. 2014), a Class II felony. A Class II felony is punishable by one to fifty years' imprisonment under Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Darryl was sentenced as a habitual criminal as defined by Neb. Rev. Stat. § 29-2221 (Reissue 2008). The habitual criminal statute provides enhancement of the penalty for a felony conviction where one is also found to be a habitual criminal. Darryl does not challenge the finding that enhancement was appropriate in this case. The statute establishes a mandatory minimum sentence of ten years' imprisonment and a maximum of 60 years' imprisonment. The sentence imposed by the district court was clearly within the statutory limits.

The Nebraska Supreme Court has stated that it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). The court advised Darryl that, with the inclusion of the 10-year mandatory minimum, he would serve 13 years total on the low end, and 20 on the high end of the 16- to 30-year sentence. Even

considering the habitual criminal enhancement, this sentence is on the lower end of the range for a Class II felony.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Carpenter, supra.* With regard to the relevant factors that must be considered and applied the Nebraska Supreme Court has stated that when imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) the motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* See *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

Darryl asserts the court did not appropriately consider the factors set forth above. Rather, he asserts that considering these factors, the court should have found the evidence supported a lesser sentence.

Darryl was given the opportunity to make a statement at sentencing, and he asked the court to consider his difficult childhood and family history, and his love for Tina and her children. The court considered this statement, as well as the presentence investigation report, which indicated that Darryl has a lengthy criminal history, including a prior conviction for domestic violence assault. The report was prepared following a face-to-face interview utilizing the Level of Service/Case Management Inventory. Darryl scored in the high risk range for criminal history, family/marital, and leisure/recreation categories, and in the very high risk range for education/employment, companions, alcohol/drug problems, procriminal attitude/orientation, and antisocial pattern. The record shows the district court considered the details of the assault, including the amount of violence involved and the extent of the injuries that Tina suffered. The court emphasized the amount of force which would be necessary to break through the back door of a home, to break through the bathroom door, and brutality necessary to break the victim's jaw.

Upon our review of the record, we find the district court did not abuse its discretion in imposing a sentence within the statutory limits.

## CONCLUSION

We find the district court did not err in overruling Darryl's motion to dismiss, or in finding that there was sufficient evidence to support a conviction for assault in the first degree. We also find the sentence imposed by the district court was not an abuse of discretion.

AFFIRMED.