STATE OF NEBRASKA, APPELLEE, V. DAVID L. BROADSTONE, APPELLANT.

447 N.W.2d 30

Filed October 20, 1989.   No. 88-915.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After trial to a jury the defendant, David L. Broadstone, was convicted of disturbing the peace and was sentenced to probation for 18 months. Upon appeal to the district court, the judgment was affirmed. The defendant has now appealed to this court.

The defendant's assignments of error allege that the evidence was not sufficient to support the verdict and that the trial court erred in allowing the complaining witness to testify about the defendant's disturbing the peace and quiet of someone other than the person alleged in the complaint, in overruling the defendant's motion in limine, and in prohibiting the defendant from being around children under 14 years of age or going within a block of places normally frequented by children.

Neb. Rev. Stat. § 28-1322(1) (Reissue 1985) describes the offense of disturbing the peace as intentionally disturbing the peace and quiet of any person, family, or neighborhood. The complaint in this case alleged that the defendant had intentionally disturbed the peace and quiet of a person, family, or neighborhood, "to-wit: Jerry L. Gulizia . . . ."

The record shows that on March 31, 1988, Jerry Gulizia and Randall Keefe were waiting in Gulizia's front yard for their children to get out of Merle Beattie elementary school in Lincoln, Nebraska. Gulizia's daughter attended school at Merle Beattie, which was located just across the street from his house. While Gulizia and Keefe were waiting for their children, their attention was drawn to the defendant and a child, who were across the street. The defendant was using foul language and had a stick in his hand which he was hitting against a telephone pole. Children were coming out of the school at the time, and Gulizia saw 15 or 20 children walk by during that time. Gulizia testified that the defendant was using foul language when the children were near him.

Gulizia testified he heard the defendant say words like "motherfucker," and the child with the defendant would then repeat what the defendant had said. When the language continued, and their children started to cross the street, Gulizia and Keefe decided to cross the street and talk to the defendant because some of the children appeared to be frightened. Gulizia

said that he was not shocked by what he heard, but he was upset that the children were exposed to it.

After Gulizia and Keefe had crossed the street, Gulizia asked the defendant if he was waiting for some children. The defendant replied it was none of his "fucking business." Gulizia then asked the defendant if he would leave. The defendant became violent and began shaking the stick, striking Gulizia on the arm and yelling obscenities such as "cocksucker" and "motherfucker." Gulizia then pushed the defendant against the fence and tried to settle him down.

After Gulizia released the defendant, the defendant ran down the sidewalk and said, "Your wife is a whore. Your daughter is a whore. Your whole family's a whore. I fucked her last night." At that time there were 15 or 20 children scattering to get away from the defendant.

When asked how the defendant's comments made him feel, Gulizia stated, "It didn't make me feel too good," and he was upset by the defendant's behavior.

Gulizia further testified that he was upset by the defendant's swearing in front of the children. He was not bothered by the defendant's swearing at him, but it was the fact the defendant was swearing in front of the children that bothered him. Gulizia asked his wife to call the police.

Keefe's testimony generally corroborated the testimony of Gulizia.

Officer Michael Martin, who responded to the call, testified that in response to his questions, the defendant said that he was standing on the sidewalk in front of the school with his nephew, who was slightly retarded, and that the nephew had been yelling obscenities at the children. The defendant said he was trying to get the nephew to be quiet when two men came over and pushed him against the fence.

The defendant testified that while he and his nephew were taking a walk, his nephew started mumbling something when the children started coming out of school. The defendant was not swearing at the children, but the nephew was because one of the children had kicked him. The defendant then told his nephew to "quit saying those fucking words," which was when Gulizia and Keefe came across the street. According to the

defendant, Gulizia pushed him against the fence and threatened to kill him. When Gulizia released the defendant, the defendant said, Gulizia made an obscene remark to the defendant. The defendant responded by saying, "Well, I screwed your wife last night, and I thought she was a whore." The defendant admitted using profanity toward Gulizia, but not toward the children.

The jury returned a verdict of guilty, and the defendant was sentenced to probation for 18 months. Upon appeal to the district court, the judgment was affirmed.

In determining whether the evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts in the evidence, pass on the witnesses' credibility, determine the plausibility of explanations, or reweigh the evidence. These matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Culver, ante* p. 228, 444 N.W.2d 662 (1989).

The evidence of the State which has been summarized was sufficient, if believed, to permit the jury to find the defendant guilty beyond a reasonable doubt.

In *State v. Coomes*, 170 Neb. 298, 301-02, 102 N.W.2d 454, 457 (1960), we said:

> A breach of the peace is a violation of public order. It is the same as disturbing the peace. The definition of breach of the peace is broad enough to include the offense of disturbing the peace; it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community. [Citations omitted.]
>
> Breach of the peace is a common law offense. The term "breach of the peace" is generic and includes all violations of public peace, order, decorum, or acts tending to the disturbance thereof.

In *State v. Sukovaty*, 178 Neb. 779, 135 N.W.2d 467 (1965), the defendant was charged with disturbing the peace by publicly cursing, swearing, and using profane, obscene, indecent, abusive, and offensive language against the complaining witness. The evidence showed that the defendant failed to leave after being requested to do so and used profane and abusive language against the complaining witness and disturbed his

peace and quiet by disorderly conduct. In affirming the conviction, we approved a definition of disorderly conduct as any act which tends to breach the peace or disturb those who see or hear it, and a definition of peace, as used in this phrase, as the tranquility enjoyed by members of a community where good order reigns.

The defendant argues that his language was protected speech under his right to freedom of speech under the 1st and 14th amendments to the U.S. Constitution. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942), defines language that tends to incite assault or other immediate breach of the peace as "fighting" words, which are not constitutionally protected forms of speech. In the *Chaplinsky* case the Court said at 571-72:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell v. Connecticut*, 310 U.S. 296, 309-310.

In *Cantwell v. Connecticut*, 310 U.S. 296, 308-10, 60 S. Ct. 900, 84 L. Ed. 1213 (1940), the Court said:

> The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. . . .
>
> . . . .
>
> . . . One may, however, be guilty of the offense if he

commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.

This court has held words such as those used by the defendant are fighting words. See *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985).

The defendant's motion in limine sought to prevent the State from arguing the evidence because the evidence related to the defendant's disturbing the peace and quiet of someone other than the person named in the complaint. The evidence established that, in addition to the defendant's statements directed at Gulizia personally, the defendant's use of profanity in the presence of the children disturbed Gulizia.

In *The State v. Burns*, 35 Kan. 387, 11 P. 161 (1886), the defendant's conviction for disturbing the peace was affirmed, although the objectionable words and acts of the defendant were directed toward her former husband and not the complaining witness. The Kansas Supreme Court approved an instruction which stated in part:

> "Although the words and acts of the defendant may have been primarily directed against some person other than [the complaining witness] or his family, yet if the defendant's words and acts were wrongful and willful, and the natural and necessary consequences of them were the disturbance of [the complaining witness] and his family, the defendant is equally guilty as though she had no other intention than the disturbance of [the complaining witness] and his family. . . ."

*Id.* at 390, 11 P. at 162. The assignment of error is without merit.

The trial court included the following conditions in the order of probation:

10. Shall have no contact with children 14 years of age or younger, except in the presence of any such child's parent or guardian. This term <u>includes</u> Mr. Broadstone's immediate family. For purposes of this term, "no contact" means that Mr. Broadstone shall not affirmatively remain in the physical presence of children. Further, he shall not telephone, write or converse directly or indirectly with children.

11. To physically stay away from every public or private schoolground, public or private playground, recreational center, athletic field, swimming pool and any other place, public or private, where children habitually congregate. For the purposes of this term "stay away" means that Mr. Broadstone shall not be found within one city block of any of the above places.

Although the defendant assigned error as to these conditions, the matter was not argued in the defendant's brief. This court does not consider assignments of error not discussed in the brief. *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987).

Similar conditions were included in the defendant's bonds. Generally, an objection to a bond cannot be made by appeal. See, *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974); *State v. Watkins*, 190 Neb. 450, 209 N.W.2d 184 (1973).

The judgment is affirmed.

AFFIRMED.