778 N.W.2d 494 (2009)
18 Neb. App. 163
STATE of Nebraska, appellee,
v.
Bradley A. GAY, appellant.
No. A-08-1103.
Court of Appeals of Nebraska.
December 1, 2009.
*495 James Martin Davis, of Davis Law Office, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.
INBODY, Chief Judge, and IRWIN and MOORE, Judges.
IRWIN, Judge.

I. INTRODUCTION
Bradley A. Gay appeals an order of the district court for Douglas County, Nebraska, affirming his conviction and sentence by the county court for Douglas County for third degree domestic assault. On appeal, Gay alleges that there is insufficient evidence to prove the victim of the assault was an "intimate partner" pursuant to Neb.Rev.Stat. § 28-323 (Reissue 2008) and that as a result, there is insufficient evidence to sustain his conviction for third degree domestic assault. We affirm.

II. BACKGROUND
The State filed a criminal complaint charging Gay with third degree domestic assault pursuant to § 28-323. The charge against Gay stems from an incident which occurred in August 2007. Evidence adduced at trial revealed that Gay was at his parents' house "hanging out" with Amy Walter (Amy), when she became upset with him and accused him of cheating on her. Gay and Amy began to argue, and the argument became physical. The argument was eventually broken up by Gay's mother. Subsequently, Amy left the Gay residence and went to the sheriff's office. There, she reported that Gay had "beat [her] up."
Gay's argument on appeal concerns whether there was sufficient evidence to demonstrate that Amy was his "intimate partner" at the time of the assault. As such, we limit our discussion of the facts presented at trial to only those necessary for the resolution of this issue.
At trial, both Gay and Amy testified concerning their relationship. Amy testified that in August 2007, she was dating Gay. She testified that at such time, they had been together for a year; however, she indicated that they had been arguing with each other for approximately 1 month because Gay was cheating on her.
During Gay's testimony, he also described his relationship with Amy as a dating relationship. He testified that he met Amy on a social networking Web site and that they "basically messaged each other randomly and began to hang out and that's how we became in a relationship and started dating." Gay testified that Amy often spent the night at his parents' house with him, but that his parents required her to sleep in the guestroom. Gay agreed with Amy's testimony that at the time of the incident, they had been fighting for about a month because Amy believed he was cheating on her. Gay testified that it was actually Amy who had cheated on him and that Amy was a very jealous person who would not let him "hang out with other females."
Gay's mother, father, and brother and Amy's father also testified about Gay and Amy's relationship. Gay's mother testified that at the time of the incident, Gay and Amy were in a dating relationship, and that she considered them to be "boyfriend/girlfriend." Gay's father testified that he had known Amy for about a year prior to the incident, that she had been to his house numerous times during that *496 year, and that she had even stayed overnight at his house on many occasions. Gay's brother described Amy as Gay's "ex-girlfriend." Amy's father testified that Amy and Gay had dated for about a year at the time of the incident.
After the conclusion of the trial, the county court found Gay guilty of third degree domestic assault and sentenced him to 90 days in jail. Subsequently, Gay appealed to the district court, which affirmed the conviction and sentence. Gay now appeals to this court.

III. ASSIGNMENTS OF ERROR
On appeal, Gay alleges that there is insufficient evidence to prove that Amy was his "intimate partner" pursuant to § 28-323 and that as a result, there is insufficient evidence to sustain his conviction for third degree domestic assault.

IV. STANDARD OF REVIEW
Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. McGhee, 274 Neb. 660, 742 N.W.2d 497 (2007).

V. ANALYSIS
Section 28-323(1) provides, "A person commits the offense of domestic assault in the third degree if he or she: (a) Intentionally and knowingly causes bodily injury to his or her intimate partner; or (b) Places, by physical menace, his or her intimate partner in fear of imminent bodily injury." In this case, Gay does not dispute the sufficiency of the evidence concerning whether he intentionally and knowingly caused bodily injury to Amy or placed Amy in fear of imminent bodily injury. Rather, Gay asserts that there is insufficient evidence to sustain his conviction for third degree domestic assault because the State did not present evidence to establish that Amy, the victim of the assault, was his intimate partner.
Section 28-323(7) defines an "intimate partner" as "a spouse; a former spouse; persons who have a child in common whether or not they have been married or lived together at any time; and persons who are or were involved in a dating relationship." Section 28-323(7) goes on to define a "dating relationship" as "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement, but does not include a casual relationship or an ordinary association between persons in a business or social context."
At trial, both Gay and Amy testified that they were dating at the time of the assault. Amy testified that she and Gay had been dating for about a year. Gay testified about the evolution of their relationship. He testified that they initially contacted each other on a social networking Web site and then began to "hang out" with each other. Gay indicated that eventually, he and Amy began a more serious relationship and started dating. Gay's and Amy's families also testified that Gay and Amy were in a dating relationship at the time of the assault. The families referred to Gay and Amy as "boyfriend/girlfriend." Gay's parents testified that Amy spent a lot of time at their home with Gay and that she *497 often would spend the night in their home's guestroom.
Both Gay and Amy testified that the argument in August 2007 was precipitated by Amy's concerns that Gay had been cheating on her. Gay and Amy testified that for approximately 1 month prior to the incident, they had been arguing about whether Gay was cheating on Amy. Gay testified that Amy had actually cheated on him early on in their relationship and that Amy was a very jealous person who would not let him "hang out with other females." Gay testified that he and Amy struggled to trust each other.
In Gay's brief to this court, he argues that this evidence does not demonstrate any affectional or sexual involvement between Gay and Amy, but, rather, demonstrates that Gay and Amy had only a casual relationship. In support of this argument, Gay highlights the testimony indicating that Amy slept in a guestroom when she stayed overnight at Gay's parents' home. Gay argues, "The only evidence at the trial relating to the relationship was that [Gay and Amy] were prevented from `intimate' relations by their parents who required them to sleep in separate bedrooms when [Amy] spent the night at [Gay's] house." Brief for appellant at 9 (emphasis in original).
We recognize that there is no evidence that Gay and Amy had a sexual relationship. However, the language of § 28-323(7) does not provide that proof of a sexual relationship is necessary to establish a dating relationship between the victim and the defendant. Rather, under § 28-323(7), a dating relationship can be characterized by the expectation of either affectional involvement or sexual involvement.
Here, there is no dispute that Gay and Amy were dating each other or that they were considered to be "boyfriend/girlfriend." Furthermore, there is evidence of the expectation of affectional involvement. The altercation was precipitated by Amy's concerns that Gay was dating other girls or cheating on her. Gay testified that he had concerns that Amy had previously cheated on him. Such evidence indicates that Gay and Amy considered their relationship to be more than casual or ordinary. In fact, Gay's testimony about the progression of their relationship demonstrates that initially the relationship was casual or social, but that over time it developed into a more involved and serious dating relationship.
When we view the evidence in the light most favorable to the State, we find that there is sufficient evidence to demonstrate that Gay and Amy were in a dating relationship at the time of the assault and that as a result, Amy was Gay's intimate partner pursuant to § 28-323.

VI. CONCLUSION
We find that the State presented sufficient evidence to establish that Amy, the victim of the assault, was Gay's intimate partner. As such, we find sufficient evidence to support Gay's conviction for third degree domestic assault. We affirm.
AFFIRMED.