Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/28/2017 09:13 AM CST

State of Nebraska, appellee, v.
Michael R. Thomas, appellant.
___ N.W.2d ___

Filed November 7, 2017.   No. A-16-1195.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.
2. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language.

7. **Criminal Law: Statutes.** When dealing with penal statutes, it is a fundamental principle of statutory construction that they be strictly construed. In doing so, a court cannot supply language which is absent from the statutory definition for a criminal offense.

8. **Criminal Law: Statutes: Legislature.** A criminal statute includes only those elements which the Legislature explicitly included in its text.

9. **Criminal Law: Minors: Proof.** Neb. Rev. Stat. § 28-707 (Cum. Supp. 2014) only requires proof of the status of the victim as a minor child; the statute does not require proof of the victim's actual identity or birth date.

10. **Trial: Presumptions.** Under Neb. Rev. Stat. § 28-707(1) (Cum. Supp. 2014), triers of fact may apply to the subject before them that general knowledge which any person must be presumed to have.

11. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

12. **Sentences.** When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense.

13. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County, Kevin R. McManaman, Judge, on appeal thereto from the County Court for Lancaster County, Matthew L. Acton, Judge. Judgment of District Court affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Matthew Meyerle for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Bishop, Judge.

## I. INTRODUCTION

Michael R. Thomas was convicted of negligent child abuse, a Class I misdemeanor, and disturbing the peace, a Class III misdemeanor, after a bench trial in the county court for Lancaster County. He appealed to the district court for Lancaster County, which affirmed the judgment of the county court. On appeal to this court, Thomas asserts the child abuse statute requires proof of the identity and birth date of the victim. He also claims that the evidence was insufficient for both convictions and that his sentences are excessive. We affirm.

## II. BACKGROUND

At approximately 1:30 a.m. on June 27, 2015, law enforcement officers responded to a disturbance call at an apartment building located on South 16th Street in Lincoln, Nebraska. The officers were responding to the scene of an altercation between Thomas and Yvette Taylor that took place in front of the apartment building. Thomas was eventually issued a citation by one of the officers at the scene.

At trial, the State provided witness testimony from two officers, a neighbor, and a guest of the neighbor on the night in question. The neighbor lives in an apartment on the second floor of the building, with a balcony overlooking the front entrance. She testified that the neighborhood was "pretty quiet" prior to the altercation between Thomas and Taylor and that not many people were around. The neighbor, the guest, and another person were socializing on the balcony at the neighbor's apartment when they heard loud screaming and profanity in front of the building. The neighbor saw Thomas and Taylor arguing loudly, and both appeared to be intoxicated and were screaming obscenities at each other. Both the neighbor and the guest testified a young female child was in between Thomas and Taylor, crying and begging the adults

to stop fighting. The neighbor estimated the child's age was between 4 and 6 years old. The guest estimated the child to be 3 or 4 years old. Both testified their estimates were based on their experience with children of a similar age.

The neighbor testified that during the argument, Thomas became angry and shoved Taylor onto the concrete steps behind her, where she hit her elbow and head. The neighbor recalled the child was in between Taylor and Thomas at the time, whereas the guest stated the child was 3 to 5 inches "[o]ff to the side" of Taylor at the time. After witnessing Thomas shove Taylor, both the neighbor and the guest went inside to call the police. Both testified that while they were inside, they could still hear Thomas and Taylor yelling and the child crying despite the neighbor's balcony door being shut.

When the police arrived, the neighbor observed Thomas run inside the apartment building. The first officer to respond also saw Thomas run into the apartment building when he arrived at the scene and found Taylor being consoled by the child. The officer testified that he was able to identify Taylor based on previous interactions with her and that the child consoling her was her daughter. The officer estimated the child to be between 5 and 6 years old, based on his experience with children.

The first officer was unable to make contact with Thomas in the building, but the second officer testified he was able to do so when he arrived and was able to issue a citation accordingly. Taylor was deemed too intoxicated to care for the child, so both Taylor and the child were transported to central headquarters. Taylor was "'placed at detox,'" and the child was approved by the Department of Health and Human Services to stay with her maternal grandmother for the night. Based on all of these interactions, the first officer stated there was not "any chance" the child was older than 5 or 6 years old. Any further trial evidence relevant to the errors assigned will be discussed in our analysis below.

At the close of the State's case in chief, Thomas moved to dismiss the child abuse charge because the State did not enter the name or birth date of the child victim into evidence. The county court ruled that the exact identity (name and birth date) of the victim is not an element of child abuse and that the State must only show the victim is a minor child.

The county court found Thomas guilty of both negligent child abuse and disturbing the peace and subsequently sentenced him to 3 months' imprisonment on each conviction, to be served consecutively. Thomas appealed his convictions and sentences to the district court. The district court affirmed the convictions and the sentences, and Thomas now appeals from that decision.

## III. ASSIGNMENTS OF ERROR

Thomas assigns that the district court erred when it concluded (1) the identity of the victim is not an essential element of child abuse under Neb. Rev. Stat. § 28-707 (Cum. Supp. 2014), (2) there was sufficient evidence to convict Thomas of negligent child abuse under § 28-707 or of disturbing the peace under Neb. Rev. Stat. § 28-1322 (Reissue 2016), and (3) the sentences imposed by the county court were not excessive.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

[2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017).

[3,4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Hunnel*, 290 Neb. 1039, 863 N.W.2d 442 (2015).

## V. ANALYSIS

### 1. Essential Elements of Child Abuse

Thomas contends the exact identity of the victim is an essential element of the crime of child abuse under § 28-707, and he further asserts that "whether the identity of a minor child is a required element of child abuse has not been previously addressed by Nebraska appellate courts." Brief for appellant at 18. He argues the State had to offer evidence establishing the name and birth date of the child involved in order to prove the victim was indeed a minor, and he further argues its failure to do so means Thomas could not be convicted of child abuse as a matter of law. The State claims the plain language of the statute controls and does not require the exact name or birth date of the victim. Before addressing these contrary positions, we first consider the legal principles governing statutory interpretation.

[5-8] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Beitel, supra*. It is not within the province of a court to read a meaning into a statute that is

not warranted by the language. *Id*. When dealing with penal statutes as in this case, it is a fundamental principle of statutory construction that they be strictly construed. See *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In doing so, a court cannot supply language which is absent from the statutory definition for a criminal offense. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989). The Nebraska Supreme Court has held this to mean a criminal statute includes only those elements which the Legislature explicitly included in its text. *Burlison, supra*.

The text of § 28-707 relevant here states: "(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be: (a) Placed in a situation that endangers his or her life or physical or mental health." When the offense is committed negligently and does not result in serious bodily injury or death, it is a Class I misdemeanor. See § 28-707(3). The statute requires only that the victim be a "minor child"; the status of the victim as a minor child is plain and unambiguous. There is no requirement of proof as to the name or birth date of the minor child anywhere in the text.

Thomas relies on *State v. Gay*, 18 Neb. App. 163, 778 N.W.2d 494 (2009), and *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997), to argue that proving the victim is a minor child implicitly requires evidence of the minor child's name and birth date, making them "essential elements." Brief for appellant at 20. *Gay* involved a prosecution against a defendant for third degree domestic assault of his "intimate partner" under Neb. Rev. Stat. § 28-323 (Reissue 2008), and *Cebuhar* involved a prosecution for an assault on a "peace officer" under Neb. Rev. Stat. § 28-931 (Reissue 1995). Thomas suggests those cases interpret their respective statutes to require proof of the name of the victim as an essential element in order to show the victim was in the specific class of victims the relevant laws sought to protect, e.g., intimate partners or peace

officers. However, neither *Gay* nor *Cebuhar* stands for the proposition that the language of the relevant statutes requires the exact name of the victim be proved as an additional or essential element of the crime necessary for a conviction.

In *Gay, supra*, the statute at issue described third degree domestic assault as causing bodily injury to an "intimate partner" or placing an intimate partner in fear of imminent bodily injury. The convicted defendant argued there was insufficient evidence to prove the victim of domestic assault in that case was his intimate partner. The defendant argued that the evidence did not demonstrate a sexual involvement between himself and the victim, but, rather, a casual relationship, and that therefore, the State failed to present evidence to establish the victim of the assault was his intimate partner. Although this court recognized there was no evidence the defendant and victim had a sexual relationship, the court noted the statute at issue did not provide that proof of a sexual relationship is necessary to establish a dating relationship between the victim and the defendant. Since the evidence was sufficient to demonstrate a dating relationship at the time of the assault, the victim was the defendant's intimate partner pursuant to the domestic assault statute. As correctly noted by the district court in the present matter, the question in *Gay* was the victim's status as an intimate partner, and contrary to Thomas' argument: "[T]he class of persons intended to be protected by that statute did not require establishment of the identity of the individual victim, but rather that person's status as an intimate partner."

With regard to *Cebuhar, supra*, the district court's order in the present matter again correctly determined that the question in *Cebuhar* was the status of the victim as a peace officer, not the officer's actual identity. Notably, the critical issue in *Cebuhar* was the mens rea of the defendant with regard to that status, an issue not presented in this case. The district court further stated:

While proving the identity of the victim by name and date of birth may be the most common way to prove the status of the victim as a minor child, the Legislature did not dictate that as an exclusive path. Giving the words of . . . § 28-707 their plain and ordinary meaning leads this Court to the conclusion that the State need not prove the identity of the victim of Negligent Child Abuse; rather, the law requires proof of the status of the victim as a minor child.

[9] We agree with the district court that the plain and ordinary meaning of § 28-707 only requires proof of the status of the victim as a minor child; the statute does not require proof of the victim's actual identity or birth date. While offering evidence of the exact name or birth date of a victim might be the most persuasive manner to prove the status of a victim as a minor child, especially if the child is older and the child's status as a minor may be less clear than in the present case, it is not required by the statute. As has been repeatedly stated, it is not within the province of the courts to read a meaning into a statute that is not there, nor to read anything direct and plain out of a statute. *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

## 2. Insufficient Evidence

### (a) Negligent Child Abuse

Thomas argues the State did not put on sufficient evidence to convict him of negligent child abuse. He makes this argument based on three facts about the evidence established at trial. First, there was no evidence the child was actually harmed or physically injured. Second, there was testimony that Thomas did not intend to hurt the child, but instead "was posturing by trying to get in the [child's mother's] face." Brief for appellant at 23. Finally, there was testimony that the child tried to console her mother after the altercation.

[10] None of these facts demonstrate there was insufficient evidence to support a conviction of negligent child abuse

under § 28-707. As noted previously, the relevant language of § 28-707(1) states, "A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be: (a) Placed in a situation that endangers his or her life or physical or mental health." When interpreting § 28-707(1), "'[t]riers of fact may apply to the subject before them that general knowledge which any person must be presumed to have.'" See *State v. Knutson*, 288 Neb. 823, 844, 852 N.W.2d 307, 324 (2014).

The plain language of § 28-707 does not require evidence showing the minor child suffered actual harm or physical injury. It simply requires the minor child's physical (or mental) health be "endanger[ed]." Additionally, Thomas' intent is not relevant, as his conviction was for negligent child abuse, a separate crime with a lesser punishment than intentional child abuse. Compare § 28-707(3), (5), and (6) with § 28-707(4), (7), and (8). Finally, the fact that the child was consoling her mother does not undermine any of the evidence put on by the State in order to convict Thomas under § 28-707.

The evidence at trial was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Witnesses testified that on the night in question, Thomas was in a heated argument with the child's mother at approximately 1:30 a.m. Thomas was described as very aggressive and drunk at the time, and during the argument, he shoved the mother onto the concrete steps behind her. Two witnesses observed that during the altercation, the child was close to her mother when Thomas pushed the child's mother. The evidence differed as to the exact location of the child, but all testimony placed her very near the altercation. Although three witnesses had different estimates of the child's age, they only varied between the ages of 3 to 6 and were all based on personal experiences with children. No objections were made to any of the testimony regarding the child's age. There was evidence the child was extremely upset and crying throughout the incident as she attempted to protect her

mother, and the child's cries could be heard inside an apartment through a closed door. Given the child's age, the child's proximity to the altercation, and the violence and injuries to her mother which she witnessed, we find that a rational fact finder with a general knowledge of children her age could find the child's physical or mental health was endangered by Thomas' actions.

### (b) Disturbing the Peace

Thomas also contends the State did not put on sufficient evidence to convict him of disturbing the peace under § 28-1322, because the evidence did not show Thomas acted with the intention to disturb the peace and quiet of other individuals in the neighborhood. Thomas acknowledges that *State v. Broadstone*, 233 Neb. 595, 447 N.W.2d 30 (1989), and a case cited therein, *The State v. Burns*, 35 Kan. 387, 11 P. 161 (1886), stand for the proposition that a conviction for disturbing the peace is permitted "even where the offensive language or disturbance is not directed at the complaining witness." Brief for appellant at 25. However, Thomas suggests his case is distinguishable because of the following:

> [In both *Broadstone* and *Burns*,] a closer examination of the facts reveals that there was some nexus of intent to annoy or harass or disturb the peace of the complaining witness, in addition to others. By contrast, in [Thomas'] case, no evidence was presented that [Thomas] acted with any intent to annoy, harass, or disturb [the witnesses in his case].

Brief for appellant at 25-26. Thomas asserts he therefore cannot be convicted of disturbing the peace, because the State did not establish that he acted with the intention to disturb the peace and quiet of other individuals in the neighborhood.

However, the plain language of § 28-1322 does not require proof Thomas intended to disturb the peace of others; it requires only that his intentional acts resulted in disturbing the peace of others. Section 28-1322(1) provides, "Any person

who shall intentionally disturb the peace and quiet of any person, family, or neighborhood commits the offense of disturbing the peace." As acknowledged by Thomas, *Broadstone, supra*, affirmed a conviction for disturbing the peace even when the offensive language or disturbance was not directed at the complaining witness.

In *Broadstone*, the defendant was convicted of disturbing the peace based upon evidence that he was observed using foul language and hitting a stick against a telephone pole outside an elementary school. Parents who were waiting for their children to get out of school were nearby when children started exiting the school. The parents heard the defendant use profanity when 15 or 20 children were in the area, so the parents approached the defendant because some of the children appeared to be frightened. Although a complaining parent testified he was not shocked by what he heard, that parent was upset children were being exposed to it. When that parent suggested the defendant should leave the area, the defendant became violent and began shaking the stick and striking the parent on the arm while also yelling obscenities. The Nebraska Supreme Court stated:

> "A breach of the peace is a violation of public order. It is the same as disturbing the peace. The definition of breach of the peace is broad enough to include the offense of disturbing the peace; it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community. . . .
>
> ". . . The term 'breach of the peace' is generic and includes all violations of public peace, order, decorum, or acts tending to the disturbance thereof."

*State v. Broadstone*, 233 Neb. 595, 599, 447 N.W.2d 30, 33 (1989) (quoting *State v. Coomes*, 170 Neb. 298, 102 N.W.2d 454 (1960)). *Broadstone* also referred to *The State v. Burns*, 35 Kan. 387, 11 P. 161 (1886), noting that in that case the defendant's conviction for disturbing the peace was affirmed even though the objectionable words and acts of the

defendant were directed toward someone other than the complaining witness.

In *Broadstone*, the court noted the evidence established that in addition to the defendant's statements directed at the complaining parent personally, the defendant's use of profanity in the presence of the children disturbed that parent. *Broadstone* makes it clear that a defendant's intentional act, which results in a disturbance of the public peace or tranquility enjoyed by the citizens of a community, does not require proof that the defendant intended to disturb the peace and quiet of other individuals in the neighborhood.

Accordingly, the question is whether a rational fact finder could find Thomas' intentional actions breached the peace or disturbed those who saw or heard him. We find that a rational fact finder could reach that conclusion based on the evidence admitted at Thomas' trial. The evidence shows the altercation took place at 1:30 a.m., and at the time, the neighborhood was "pretty quiet" and not many people were around. Witnesses testified Thomas was acting very aggressive and drunk, arguing loudly and screaming profanity at Taylor before shoving her to the ground. They also testified the screaming could be heard inside a second floor apartment even with the balcony door shut. This evidence could rationally be found to constitute disturbing the peace.

### 3. Excessive Sentences

Thomas contends a sentence of 3 months' imprisonment for each conviction is excessive; he had requested a sentence of probation. Thomas' sentences for each of his convictions fell within statutory limits. Negligent child abuse under § 28-707 is a Class I misdemeanor punishable by not more than 1 year's imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014). Disturbing the peace under § 28-1322 is a Class III misdemeanor punishable by up to 3 months' imprisonment, a $500 fine, or both. See § 28-106. (We note that Thomas' offenses occurred prior to August 30,

2015, the effective date of 2015 Neb. Laws, L.B. 605, which changed the classification of certain crimes and made certain amendments to Nebraska's sentencing laws.)

[11-13] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The presentence investigation report notes that Thomas appeared for his interview but left because he was not feeling well, and the probation officer was unable to reschedule prior to the sentencing hearing (it is not clear how much information Thomas provided before leaving). However, the presentence investigation report does contain other information gathered by the probation officer. The record shows Thomas was 39 years old at the time of sentencing. He was married but separated from his wife, and he had no dependents. He completed his high school education through the 10th grade, but attained his "GED." He has a history of substance abuse dating back to age 14, but reported that since the altercation in this case, he had been sober and attending weekly meetings for alcohol abuse. He also reported finding a job after the altercation, prior to which he was not employed.

Thomas' record of convictions as an adult dates back to a 1995 conviction for unauthorized use of a motor vehicle (14 days' jail time), followed by convictions for assault in 1996 (6 months' jail time and $750 fine), driving under suspension in 1997 (7 days' jail time and 3 months' probation), an open container violation in 1999 (fine), and a separate incident leading to convictions for criminal trespass and criminal mischief also in 1999 (30 days' jail time). In 2000, he was convicted of third degree assault (1 year's imprisonment) and terroristic threats (5 years' imprisonment followed by 5 years' probation; his probation was later revoked). In 2005, Thomas was convicted of family violence in Wyoming (6 months' jail time and $750 fine). In 2006, Thomas was convicted of driving under the influence and no operator's license in Nebraska (7 days' jail time). Two months later, in Wyoming, he was convicted of aggravated assault and battery and reckless endangering (36 to 60 months' imprisonment). In 2011, Thomas was convicted in Nebraska for resisting arrest (1 year's probation, but a probation violation was filed approximately 2 months later). Finally, in 2012, he was convicted of third degree domestic assault, subsequent offense (20 months' to 5 years' imprisonment, which he finished serving 3 months before his arrest in the current case).

Thomas contends the court abused its discretion by failing to give proper weight and consideration to the relevant sentencing factors and all of the facts and circumstances surrounding his life. More specifically, Thomas claims the sentencing court failed to meaningfully consider both the efforts he made following the offense to rehabilitate himself and his compatibility with a probationary sentence, which he asserts would "keep him accountable." Brief for appellant at 28.

The county court stated at the sentencing hearing it could not overlook Thomas' 20-year criminal history which included multiple assault convictions—the most recent sentence of which Thomas had been discharged from serving only 3 months prior to the altercation leading to the convictions in

this case. The court specifically concluded Thomas was not an appropriate candidate for probation based on his criminal history, which includes a prior probation revocation and a separate probation violation being filed.

It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013). Given the record before us and the court's stated reasoning, we do not find the court's sentences untenable or unreasonable, nor do we find them to be against justice or conscience, reason, and the evidence.

## VI. CONCLUSION

For the reasons set forth above, we affirm Thomas' convictions and sentences.

Affirmed.