Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:16 AM CST

In re Interest of Elainna R., a child
under 18 years of age.
State of Nebraska, appellee,
v. Elainna R., appellant.

___ N.W.2d ___

Filed December 15, 2017.    No. S-17-237.

1.  **Juvenile Courts: Appeal and Error.** An appellate court reviews juve-
    nile cases de novo on the record and reaches its conclusions indepen-
    dently of the juvenile court's findings.
2.  **Ordinances: Appeal and Error.** Interpretation of a municipal ordinance
    is a question of law, on which an appellate court reaches an independent
    conclusion irrespective of the determination made by the court below.
3.  **Ordinances.** Absent anything to the contrary, the language of a city
    ordinance is to be given its plain and ordinary meaning.
4.  **Statutes.** Statutes relating to the same subject, although enacted at dif-
    ferent times, are in pari materia and should be construed together.
5.  **Schools and School Districts: Disturbing the Peace.** A school security
    officer or campus supervisor may be a victim of disturbing the peace.
6.  **Evidence: Proof.** A finder of fact may draw reasonable inferences from
    the facts and circumstances proved.

Appeal from the Separate Juvenile Court of Lancaster
County: Linda S. Porter, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and
Brittani E. Lewit for appellant.

Connor L. Reuter for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and
Funke, JJ., and Moore, Chief Judge.

Funke, J.

The appellant, Elainna R., was adjudicated by the separate juvenile court of Lancaster County, under Neb. Rev. Stat. § 43-247(1) (Reissue 2016), for violating a Lincoln city ordinance prohibiting disturbing the peace. The juvenile court found proof beyond a reasonable doubt that Elainna knowingly or intentionally disturbed the peace of Sief Mahagoub, a high school security officer, by engaging in fighting. For the reasons discussed herein, we affirm.

## BACKGROUND

On November 17, 2016, Elainna was attending Lincoln Southeast High School. On that day, she was involved in a fight with another student, A.L., in the hallway of the school. The named victim in this case, Mahagoub, is employed at the school as a campus supervisor and security officer and had been so employed for 4 years. His duties include maintaining safety and security on the school campus.

About 1:17 p.m., Mahagoub observed the two students yelling at each other. Elainna then angrily ran toward A.L. while Mahagoub attempted to stop the fight before it became physical.

Mahagoub yelled, "Stop, stop, stop," in a loud, commanding voice and positioned himself between the students. Elainna, however, struck A.L.'s head and grabbed her hair. Mahagoub tried to separate the two, but Elainna maintained her grip on A.L.'s hair. Mahagoub continued to command Elainna to stop, and the three scuffled to the ground.

Mahagoub again yelled, "Stop" and "Let go." With the help of another adult, Mahagoub separated the students. The incident lasted between 2 and 3 minutes.

Mahagoub testified that altercations like this are very common with students of that age, but said that this fight was disruptive to the workday. Mahagoub described the altercation as "very intense" and "very difficult" to stop. He described Elainna as the aggressor and observed her strike A.L. multiple

times. After the altercation, Mahagoub observed hair on the floor that was consistent with A.L.'s hair.

Mahagoub stated he acted in accordance with his training, which instructed him to do as much as possible to prevent harm. On cross-examination, Mahagoub testified that he has trained as a military police officer and served three tours in Iraq. He further stated that the school provided him 2 full days of training for his role as a security officer and that he received specific training on how to deal with upset and aggressive students. He stated his job duties include breaking up fights between students.

According to Mahagoub, he has dealt with many fights during his time as campus supervisor, including students who were verbally and physically aggressive toward him. He also testified that he works with police officers in dealing with difficult students and occasionally assists law enforcement officers with investigations of criminal activity within the school.

An associate principal at Lincoln Southeast High School testified he witnessed the later portion of the fight after it had progressed to the floor. He observed Elainna holding the other student's hair and Mahagoub's attempts to separate them. He testified that the altercation was disruptive to the schoolday.

The juvenile petition alleged that "on or about the 17th day of November 2016, [Elainna] did knowingly or intentionally disturb the peace and quiet of . . . Mahagoub, by fighting, in violation of L.M.C. § 9.20.050." Elainna entered a denial, and the matter proceeded to adjudication.

At the conclusion of the adjudication, the court found the State had proved the allegations in the petition beyond a reasonable doubt. The juvenile court continued final disposition of the case pending the completion of a predisposition report. Elainna perfected an appeal to this court.

ASSIGNMENTS OF ERROR

Elainna assigns, restated, the following errors: (1) The juvenile court erred in determining that Mahagoub's peace was disturbed as a school security officer or campus supervisor,

and (2) the evidence was insufficient to sustain an adjudication of jurisdiction under § 43-247(1).

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[1]

[2] Interpretation of a municipal ordinance is a question of law, on which we reach an independent conclusion irrespective of the determination made by the court below.[2]

## ANALYSIS

We first consider whether, as a matter of law, an individual who engages in fighting can disturb the peace of a school security officer or campus supervisor. If we determine a person can disturb the peace of such a school official by fighting, we must consider whether the evidence in the record before the juvenile court supports an adjudication under § 43-247(1).

### SCHOOL SECURITY OFFICER OR CAMPUS SUPERVISOR MAY BE VICTIM OF DISTURBING PEACE

The relevant portion of Lincoln's disturbing the peace ordinance, Lincoln Mun. Code § 9.20.050 (2013), is as follows:

> (a) It shall be unlawful for any person to intentionally or knowingly disturb the peace and quiet of any person, family, or neighborhood, or any public assembly, or assembly of persons for religious worship. The offense of disturbing the peace shall include, but shall not necessarily be limited to, the following:
>
> (1) Engaging in fighting.

Under Neb. Rev. Stat. § 28-1322 (Reissue 2016), a person who intentionally disturbs the peace and quiet of any person,

---

[1] *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

[2] *Landrum v. City of Omaha Planning Bd.*, 297 Neb. 165, 899 N.W.2d 598 (2017).

family, or neighborhood commits the offense of disturbing the
peace. Disturbing the peace, like the common-law offense of
breach of the peace, is a violation of public order.[3] The offense
generally includes violent acts and acts and words likely to
produce violence in others.[4]

Elainna argues that Mahagoub is not a proper victim under
Lincoln's disturbing the peace ordinance and that she could
not have disturbed his peace. Relying on decisions from other
jurisdictions, she contends school safety officers, such as
Mahagoub, should be treated the same as police officers,
who she asserts have no expectation of peace and tranquility
because of their training and duties.[5]

In support of her argument, Elainna cites to several cases
which stand for the proposition that the direction of "fighting
words" toward a police officer does not amount to a disturb-
ance of the peace.[6] Elainna contends police officers frequently
encounter offensive language and have been trained to dif-
fuse such situations without physical retaliation, and therefore
are not likely to act violently in response to offensive words
or gestures.

The State argues Elainna's position is contrary to settled
Nebraska law. To support its argument, the State relies on sev-
eral Nebraska cases.[7]

---

[3] *State v. Broadstone*, 233 Neb. 595, 447 N.W.2d 30 (1989) (citing *State v. Coomes*, 170 Neb. 298, 102 N.W.2d 454 (1960)).

[4] *Broadstone, supra* note 3.

[5] See, *In re M.M.*, 54 Cal. 4th 530, 278 P.3d 1221, 142 Cal. Rptr. 869 (2012); *People v. Bowers*, 77 Misc. 2d 697, 356 N.Y.S.2d 432 (1974).

[6] *H.N.P. v. State*, 854 So. 2d 630 (Ala. Crim. App. 2003); *People v. Slaton*, 24 Ill. App. 3d 1062, 322 N.E.2d 553 (1974). See, also, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *State v. Drahota*, 280 Neb. 627, 788 N.W.2d 796 (2010).

[7] *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987); *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985); *State v. Boss*, 195 Neb. 467, 238 N.W.2d 639 (1976).

In *State v. Boss*,[8] we affirmed a conviction for abusing or resisting an officer in the execution of his office. In *Boss*, a police officer pulled over a speeding motorist and obtained his license and registration. During this process, the motorist called the officer a "'dirty son-of-a-bitch.'"[9] We found the words used by the motorist were "fighting words."[10] We specifically rejected authorities which held that such language cannot constitute "fighting words" when directed to a police officer, who is trained to accept such abuse without violent reaction.[11]

Similarly, in *State v. Groves*,[12] we affirmed a conviction for disorderly conduct under a city of Omaha ordinance, and again specifically rejected the argument that a police officer is less susceptible to such abuse than other members of the general public.

In *State v. Moore*,[13] we affirmed a conviction for disturbing the peace under a Lincoln ordinance. In *Moore*, a Lincoln police officer responded to a complaint of a disturbance at a house. The officer encountered a loud house party and shined his cruiser's spotlight on the front of the house, where individuals were standing in the dark. The defendant ran up to the cruiser and yelled, "'What the fuck are you doing here? You've got no business here. Get the fuck out of here.'"[14] The officer testified that the defendant

"continued to yell at me and I finished getting out of my cruiser and he was right up in my face. It was difficult to get out of my car, in fact. And I explained or tried to

---

[8] *Boss, supra* note 7.

[9] *Id.* at 469, 238 N.W.2d at 642.

[10] *Id.* at 471, 238 N.W.2d at 643.

[11] *Id.*

[12] *Groves, supra* note 7.

[13] *Moore, supra* note 7.

[14] *Id.* at 348, 411 N.W.2d at 347.

explain to the defendant that I was there on a disturbance call which seemed to even make him madder. . . ."[15]

We affirmed the defendant's conviction in *Moore* based on the totality of his conduct while in the officer's presence.[16] Accordingly, it is clear that in Nebraska, a police officer may be the victim of disturbing the peace.

[3,4] Absent anything to the contrary, this court will give the language of a city ordinance its plain and ordinary meaning.[17] Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.[18]

The applicable Lincoln ordinance states: "It shall be unlawful for any person to intentionally or knowingly disturb the peace and quiet of *any person* . . . ."[19] The Lincoln ordinance is broadly written and does not differentiate between public officials and the general public.

In *State v. McNair*,[20] for the purpose of analyzing a city of Omaha ordinance in a disturbance of lawful assembly case, we defined "disturb" to mean "'[t]o throw into disorder or confusion; to interrupt the settled state of.'" Section 9.20.050 of the Lincoln Municipal Code covers the same subject matter as the ordinance in *McNair*. As a result, the definition of "disturb" from *McNair* equally applies to Lincoln Mun. Code § 9.20.050.

[5] Assuming, without deciding, that Mahagoub's role as a school security officer and campus supervisor is equivalent to a police officer for purposes of Lincoln's disturbing the

---

[15] *Id.*

[16] *Moore, supra* note 7.

[17] *Brunken v. Board of Trustees*, 261 Neb. 626, 624 N.W.2d 629 (2001).

[18] *D.I. v. Gibson*, 295 Neb. 903, 890 N.W.2d 506 (2017); *Northwest High School Dist. No. 82 v. Hessel*, 210 Neb. 219, 313 N.W.2d 656 (1981).

[19] Lincoln Mun. Code § 9.20.050(a) (emphasis supplied).

[20] *State v. McNair*, 178 Neb. 763, 766, 135 N.W.2d 463, 465 (1965).

peace ordinance, we hold that a school security officer or campus supervisor may be a victim of disturbing the peace.

### Evidence Supports Adjudication
### Under § 43-247(1)

When an adjudication is based upon § 43-247(1), the allegations must be proved beyond a reasonable doubt.[21]

Elainna argues there is no evidence that she used "fighting words" against Mahagoub. Upon our de novo review, we agree. But it does not follow that Elainna did not disturb Mahagoub's peace. The State argues Elainna's conduct went beyond words and included engaging in an actual fight which necessitated Mahagoub's physical involvement.

Indeed, the degree to which Elainna disturbed Mahagoub's peace can be measured by her actions following his command to stop. Elainna passed through Mahagoub's outstretched arm to hit A.L. in the head and grab her hair. As Mahagoub continued to attempt to stop Elainna, Elainna further struck A.L. Elainna's grip on A.L.'s hair was so forceful it brought both students and Mahagoub to the ground.

As the juvenile court said in its factual findings,

> A campus supervisor, I think, does have some — part of their job is to keep the peace and regulate the safety of students, but a situation where a fight occurs, and there was evidence that Elainna was certainly an aggressor in that fight, that causes a school security officer to end up between youth and end up on the floor trying to prevent — trying to get one youth to release the hair of another youth and interrupt the fight, I think I can infer some disturbance of his peace.

[6] A finder of fact may draw reasonable inferences from the facts and circumstances proved.[22] Accordingly, we agree

---

[21] *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007); Neb. Rev. Stat. § 43-279(2) (Reissue 2016).

[22] *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995). See, also, *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009).

with the reasoning of the juvenile court. Mahagoub described his efforts to prevent and stop the fight and how difficult it was during the 2- to 3-minute incident. This evidence establishes that Elainna's actions threw Mahagoub's peace and quiet into disorder, confusion, interruption, or an unsettled state. We find the State has proved beyond a reasonable doubt that Elainna disturbed the peace of Mahagoub by engaging in fighting.

## CONCLUSION

We conclude Mahagoub, a school security officer and campus supervisor, may be an appropriate victim of disturbing the peace. Upon our de novo review, we independently find the evidence adduced sufficiently supports the juvenile court's adjudication under § 43-247(1).

AFFIRMED.

WRIGHT, J., not participating.